IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02539-MEH

PAULIE VINCENT MANNA, and
ELIZABETH MANNA,

     Plaintiffs,

v.

JOHN CRIBARI, in his individual capacity,
STEVE CRIGLER, in his individual capacity,
AARON ANDERSON, in his individual capacity, and
JAMES BERTOLAS, in his individual capacity,

     Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Before the Court is CDOC Parole Officer Defendants' Motion for Summary Judgment (ECF 39). Defendants seek summary judgment in their favor on Plaintiffs' remaining claims for violation of the Fourth Amendment for: (1) unlawful entry on behalf of Plaintiff Paulie Manna; (2) unlawful entry on behalf of Plaintiff Elizabeth Manna; (3) unlawful search on behalf of Paulie Manna; (4) unlawful search on behalf of Elizabeth Manna; (5) unlawful seizure on behalf of Paulie Manna; and (6) unlawful seizure on behalf of Elizabeth Manna. All six claims are asserted pursuant to 42 U.S.C. § 1983 against Defendants in their individual capacities.

     Defendants argue summary judgment is proper because they are entitled to qualified immunity as to all of Plaintiffs' claims, since Plaintiffs fail to identify that their Fourth Amendment rights are clearly established and to demonstrate a violation of their Fourth Amendment rights on the record before the Court. For the reasons that follow, the Court will grant Defendants' motion.

**FINDINGS OF FACT**

The Court makes the following findings of fact viewed in the light most favorable to Plaintiffs, who are the non-moving parties in this matter.

1.      Defendants are community parole officers with the Colorado Department of Corrections ("CDOC").  Defs.' Mot. for Summ. J. 1, ECF 39; Compl. ¶¶ 10-13, ECF 1.

2.      At all times relevant to the claims in this case, Bryan Huff and Jessica Williams were parolees under the jurisdiction of and supervised by the CDOC's Division of Adult Parole.  Defs.' Mot. Ex. A, Parole Order (Huff), ECF 39-1; Defs.' Mot. Ex. B, Parole Order (Williams), ECF 39-2; Pls.' Resp. ¶ 1, ECF 42.

3.      As a condition of parole, Mr. Huff and Ms. Williams each signed a written agreement or order acknowledging that they would allow parole officers to conduct home visits and "search his/her person, or his/her residence, or any premises under his/her control, or any vehicle under his/her control."  Ex. A at ¶ 4; Ex. B at ¶ 4; Defs.' Mot. Ex. C, Aff. of John Cribari ¶ 5, ECF 39-3; Resp. ¶ 2.

4.      On October 4, 2016, during their parole period, Mr. Huff and Ms. Williams resided in the home of Plaintiffs Paulie and Elizabeth Manna at 1640 Eppinger Boulevard in Thornton, Colorado.  Cribari Aff. ¶¶ 9, 10; Defs.' Mot. Ex. D, Aff. of James Bertolas ¶ 6, ECF 39-4; Resp. ¶ 3.

5.      Mr. Huff and Ms. Williams rented a room in the Manna residence beginning August 1, 2016.  Defs.' Mot. Ex. E, Elizabeth Manna Dep. 40:8-12, 45:18-46:7, 55:10-18, ECF 39-5; Defs.' Mot. Ex. F, Paulie Manna Dep. 94:16-19, ECF 39-6; Resp. ¶ 4.

6.      Individuals who agree to allow someone under parole supervision to live in their home are provided with a Sponsor Advisement form from the CDOC's Division of Adult Parole.  Cribari Aff. ¶ 6; Defs.' Mot. Ex. G, Sponsor Advisement (2016), ECF 39-7.

7.     Plaintiff Paulie Manna was provided a Sponsor Advisement form in connection with the agreement to allow Mr. Huff and Ms. Williams to live in the Manna's home.  Sponsor Advisement (2016).

8.     Plaintiff Paulie Manna signed the Sponsor Advisement form on August 3, 2016.  Sponsor Advisement (2016); Defs.' Mot. Ex. H, Pls.' Resps. to Requests for Admis. ¶ 1, ECF 39-8; Ex. F, Paulie Manna Dep. 39:5-40:9; Resp. ¶ 10.

9.     The 2016 Sponsor Advisement form identifies both Paulie and Elizabeth Manna as sponsors of Mr. Huff and Ms. Williams.  Sponsor Advisement (2016); Resp. ¶ 7.

10.    Plaintiff Elizabeth Manna did not sign the 2016 Sponsor Advisement form.  Sponsor Advisement (2016); Pls.' Resp. to Defs.' Mot. for Summ. J. Ex. 2, Elizabeth Manna Dep. 57:3-4, ECF 42-2.

11.    The 2016 Sponsor Advisement form includes the following acknowledgment: "I understand that offenders are subject to either the Colorado Parole Agreement/Order or *Code of Penal Discipline*.  As a sponsor, I understand the special requirements outlined by this document."  Sponsor Advisement (2016) (italics in original); Resp. ¶ 8.

12.    The 2016 Sponsor Advisement form also includes the following language: "I will allow Community Parole Officers to visit my residence at any time.  I will also consent to Community Parole Officers searching my residence upon request based on the parole agreement . . . ."  Sponsor Advisement (2016); Resp. ¶ 9.

13.    The Sponsor Advisement form does not include a separate advisement regarding temporary detention of occupants during a search of the residence and does not include language that the form is "irrevocable."  Sponsorship Advisement (2016); Resp. ¶ 48; Defs.' Reply ¶ 46, ECF 47.

14.     Two years prior to 2016, in 2014, Plaintiffs allowed Ms. Williams to live with them when she was serving parole at their prior residence in Arvada, Colorado.  Ex. F, Paulie Manna Dep. 33:25-34:21; Ex. E, Elizabeth Manna Dep. 26:23-27:25.

15.     On that occasion, on October 2, 2014, Plaintiff Elizabeth Manna initialed and signed a Sponsorship Advisement form for Ms. Williams.  Defs.' Mot. Ex. I, Sponsorship Advisement (2014), ECF 39-9; Ex. E, Elizabeth Manna Dep. 31:12-33:20, 36:3-5; Resp. ¶¶ 12, 13, 16.

16.     The 2014 Sponsor Advisement form includes an acknowledgement that the sponsor understands that parolees are subject to a parole agreement or order.  Sponsor Advisement (2014); Resp. ¶ 14.

17.     The 2014 Sponsor Advisement form includes the following language: "I will allow Community Parole Officers to visit my residence at any time. I will also consent to Community Parole Officers searching my residence upon request based on the parole agreement . . . ." Sponsor Advisement (2014); Resp. ¶ 15.

18.     On October 4, 2016, Defendants went to the residence of Mr. Huff and Ms. Williams at 1640 Eppinger Boulevard in Thornton, Colorado, to conduct a routine parolee home visit and search.  Cribari Aff. ¶8; Bertolas Aff. ¶6; Defs.' Mot. Ex. J, Aff. of Steve Crigler ¶ 5, ECF 39-10; Resp. ¶ 17.

19.     On October 4, 2016, Defendant Cribari was the supervising parole officer of Mr. Huff and Ms. Williams. Cribari Aff. ¶4; Resp. ¶ 18.

20.     Defendant Cribari knocked on the front door of the residence and Ms. Williams allowed the Defendants inside.  Cribari Aff. ¶ 11; Pls.' Resp. Ex. 3, Anderson Statement, ECF 42-3.

21.     Defendants Bertolas and Crigler began their search in the bedroom that belonged to Mr. Huff and Ms. Williams.  Bertolas Aff. ¶ 8; Crigler Aff. ¶ 8; Resp. ¶ 20.

22.    Defendant Anderson handcuffed Mr. Huff and Ms. Williams. Cribari Aff. ¶ 13; Anderson Statement; Resp. ¶ 19.

23.     Defendant Cribari escorted Mr. Huff outside the residence to speak with him about his parole.  Cribari Aff. ¶ 14; Resp. ¶ 21.

24.    After speaking outside, Defendant Cribari and Mr. Huff went back inside the residence. Cribari Aff. ¶ 16; Resp. ¶ 21.

25.    For the safety and security of the Defendants and the occupants of the home, Defendant Anderson remained in the living room with Ms. Williams and Mr. Huff as other parole officers cleared the house and completed the search of the residence.  Defs.' Mot. Ex. K, Aff. of Aaron Anderson ¶¶ 8, 9, ECF 39-11; Resp. ¶ 22.

26.    Defendant Bertolas did not find contraband in the bedroom that belonged to Mr. Huff and Ms. Williams.  Bertolas Aff. ¶ 8; Resp. ¶ 23.

27.    Defendant Crigler asked Mr. Huff and Ms. Williams if anyone else was in the residence, and Mr. Huff responded that his roommates were in their bedroom.  Crigler Aff. ¶ 9; Resp. ¶ 24.

28.    Defendant Crigler knocked on the bedroom door, and Plaintiff Paulie Manna opened the door.  Crigler Aff. ¶ 10; Resp. ¶ 25.

29.    Plaintiffs, along with another unknown female, were in the bedroom.  Bertolas Aff. ¶ 12; Crigler Aff. ¶10; Resp. Facts ¶ 26.

30.    Defendant Bertolas approached Plaintiffs' bedroom along with Defendant Crigler. Bertolas Aff. ¶ 9; Resp. ¶ 29.

31.    Plaintiffs and the unknown female were placed in handcuffs.  Cribari Aff. ¶ 20; Ex. 1, Paulie Manna Dep. 27:15-18, 55:7-13, 56:9-10; Ex. 2, Elizabeth Manna Dep. 81:11-15, 87:10-13.

32.     When Defendant Cribari went back inside the residence after speaking with Mr. Huff, he saw three additional individuals in the living room.  Cribari Aff. ¶ 16; Resp. ¶ 32.

33.     Defendant Cribari was informed that two of those three individuals were the Plaintiffs and that these three individuals had been in another bedroom of the residence.  Cribari Aff. ¶ 16; Resp. ¶ 33.

34.     Defendant Cribari contacted Thornton Police Department and requested assistance. Cribari Aff. ¶ 22; Resp. ¶ 36.

35.     Defendants Bertolas and Crigler entered and searched the bedroom where Plaintiffs had been located.  Bertolas Aff. ¶ 13; Crigler Aff. ¶ 15; Resp. ¶ 38.

36.     During the search of Plaintiffs' bedroom, Defendants located baggies of suspected narcotics, a digital scale, more drug paraphernalia, and antique bullets.  *Id.*; Ex. 2, Elizabeth Manna Dep. 95:19-96:9; Reply ¶ 46.

37.     Thornton police arrived at the residence and spoke with Plaintiff Paulie Manna, who admitted to ownership of narcotics and drug paraphernalia which had been located inside Plaintiffs' bedroom.  Crigler Aff. ¶16; Resp. ¶ 39.

38.     Defendants removed Plaintiff Paulie Manna's handcuffs, and he was placed under arrest by Thornton police.  Cribari Aff. ¶ 24; Resp. ¶ 40.

39.     Defendants removed the handcuffs from the other occupants of the residence.  Cribari Aff. ¶ 25; Anderson Aff. ¶ 12; Resp. ¶ 42.

## **LEGAL STANDARDS**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or

affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally

admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

Although Defendants move for summary judgment as to all of Plaintiffs' claims, *see* Mot. 22, their argument with regard to Plaintiffs' first and second claims for unlawful entry is not substantially delineated from their arguments made as to Plaintiffs' other four claims for unlawful search and unlawful seizure. On January 23, 2020, the Court heard oral argument on the motion, during which Defendants clarified they seek summary judgment for Claims One and Two on the same basis as for Plaintiffs' other four claims. Thus, Defendants make two arguments to support summary judgment on all six claims. First, they argue they are entitled to qualified immunity because the undisputed facts do not demonstrate they violated clearly established law and the facts do not establish a violation of Plaintiffs' Fourth Amendment rights. Second, relying on the "special needs" exception to the Fourth Amendment's warrant requirement, Defendants argue Plaintiffs have failed to demonstrate that Defendants violated their Fourth Amendment rights. The Court will address these arguments as applied to each set of claims.

### I.      Qualified Immunity

Defendants base their request for summary judgment on the doctrine of qualified immunity, which protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is an immunity from suit, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Id*. at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability."). The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson*, 555 U.S. at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)). Accordingly, qualified immunity questions must be resolved at the earliest possible stage in litigation." *Id*. at 232.

When a defendant asserts qualified immunity at summary judgment, the plaintiff has a two-fold burden to overcome the asserted immunity: (1) "rebut the [defendant's] no-constitutional-rights arguments"; and (2) "demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)); *see also Felders v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001))). An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or

Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

Traditionally, there has been a two-step process for resolving qualified immunity questions: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . .   Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal citations and quotation marks removed)).   However, the Supreme Court has afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

A.      Do Plaintiffs Identify Clearly Established Law for their Unlawful Entry Claims?

Plaintiffs' first and second claims allege Defendants violated their Fourth Amendment rights when Defendants entered their bedroom during a routine parole home visit and search of their residence.   At the January 23, 2020 hearing, the parties acknowledged that the motion and briefs were not clear in identifying Plaintiffs' first two claims.   However, although mixed into two, large argument sections, Defendants' motion mentions and applies their arguments as to Plaintiffs' claims for unlawful entry, search, and seizure.   *See* Mot. 10 ("[t]he CDOC Parole Officers are entitled to qualified immunity as to Plaintiffs' Fourth Amendment claims," and "[Plaintiffs] object to the CDOC Parole Officers' *entry* of the master bedroom, their *search* of that room, and their decision to briefly *detain* the occupants of the residence during the search." (emphasis added)), 14 ("Because the CDOC Parole Officers were lawfully inside Plaintiffs' residence conducting a

parole search and temporarily detained its occupants during that search for legitimate law enforcement reasons, Plaintiffs have failed to demonstrate a violation of the Fourth Amendment."), and 22 ("The CDOC Parole Officers therefore respectfully request summary judgment as to *all* of Plaintiffs' remaining claims." (emphasis added)). Therefore, in light of Defendants' asserted qualified immunity, the Court proceeds with the two-pronged analysis beginning with whether the right Defendants are alleged to have violated was clearly established.

Early last year, the Supreme Court issued an opinion addressing the "clearly established" prong of a qualified immunity defense for a Fourth Amendment claim, in which the Court re-emphasized that "the clearly established right must be defined with specificity" and not "at a high level of generality." *City of Escondido v. Emmons*, — U.S. —, 139 S. Ct. 500, 503 (2019); *see also White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined at a high level of generality. . . . Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." (quotations omitted)). In reversing the decision below, the Court quoted *District of Columbia v. Wesby*, — U.S. —, 138 S. Ct. 577, 581 (2018), saying:

> "[W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment . . . . While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate . . . . Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances . . . . But a body of relevant case law is usually necessary to clearly establish the answer . . . ."

*City of Escondido*, 139 S. Ct. at 504. Accordingly, in this case, Plaintiffs must identify a Supreme Court or Tenth Circuit case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment.

"The proffered case law 'must be particularized to the facts of the instant case. . . . And it's the plaintiff's burden to identify the relevant clearly established law." *See N.E.L. v. Douglas Cty., Colorado*, 740 F. App'x 920, 929 (10th Cir. 2018) (citations omitted); *see also Quinn v. Young*, 780 F.3d 998, 1014-15 (10th Cir. 2015) (rejecting a "generalized approach to clearly-established-law analysis" and concluding the plaintiffs failed to carry their burden "of identifying cases that constitute clearly established law on these facts" for a Fourth Amendment false arrest claim). In fact, the Tenth Circuit has unambiguously emphasized that it is a plaintiff's burden to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity" and "[b]ecause Plaintiffs did not proffer clearly established authority that Ms. Flores was seized, they did not carry their burden to rebut qualified immunity on this illegal seizure claim"). This appears to be particularly true for plaintiffs represented by counsel. *Rojas v. Anderson*, 727 F.3d 1000, 1005-06 (10th Cir. 2013) ("[G]iven the sparsity of Plaintiff's argument and his failure to point to any authority to support his claims, both here and in the district court, Plaintiff, 'through his counsel, [has simply] failed to carry the burden assigned to him by law.'" (quoting *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013))).

Plaintiffs have the burden of identifying a Supreme Court or Tenth Circuit case which clearly establishes that a parole officer violates an individual's constitutional rights during a routine home visit and residential search by entering a room in a parolee's residence that is

occupied by the parolee's sponsor. Plaintiffs fail to identify, and the Court was unable to find, a case in which an individual in circumstances similar to those alleged here was held to have violated the Fourth Amendment. Plaintiffs fail to satisfy their heavy burden in light of Defendants' asserted qualified immunity. *See Felders*, 755 F.3d at 877-78 ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'"). Because Plaintiffs have failed to meet their burden, Defendants are entitled to qualified immunity from liability for Plaintiffs' Fourth Amendment unlawful entry claims, and the Court need not proceed to the second prong of the qualified immunity analysis. *See Husk*, 919 F.3d at 1212 (quoting *Medina*, 252 F.3d at 1128) ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."). Because Plaintiffs have not shown any dispute of fact as to whether Defendants are entitled to qualified immunity as to Claims One and Two, summary judgment in Defendants' favor as to those claims is warranted.

B.     Do Plaintiffs Identify Clearly Established Law for their Unlawful Search Claims?

In their third and fourth claims for relief, Plaintiffs each allege Defendants violated their Fourth Amendment rights when Defendants searched their bedroom while conducting a routine parole search of the residence. Plaintiffs argue the law "clearly establishes two ways in which a warrantless parole search will pass constitutional muster." Resp. 9. They first outline the constitutional framework for warrantless parole searches set out by the Supreme Court in *United States v. Knights*, 534 U.S. 112 (2001) and *Samson v. California*, 547 U.S. 843 (2006), and as interpreted by the Tenth Circuit in *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002) and *United States v. Freeman*, 479 F.3d 743 (10th Cir. 2007). Plaintiffs then rely heavily on the Colorado Supreme Court's decision in *People v. McCullough*, 6 P.3d 774 (Colo. 2000), *abrogated in part by Knights*, 534 U.S. at 116-22, in arguing the right Defendants allegedly violated was

13

clearly established. Under prevailing law, the cases cited by Plaintiffs must be specific enough to put Defendants on notice that they were violating the law when they searched the entirety of the residence shared by non-parolee Plaintiffs and parolees Mr. Huff and Ms. Williams during their routine parole home visit and search.

In *Knights*, the Supreme Court held that the warrantless search of the defendant, an individual on probation, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment. 534 U.S. at 122. In so holding, the Court found the search was reasonable under the general Fourth Amendment "totality of the circumstances" approach. *Id.* at 121-22. Plaintiffs cite to pages 117-18 of the opinion and state that the *Knights* Court "hold[s] that searches performed in compliance with a valid parole agreement search provision may be constitutional even if they were not conducted by the parole officer, but some other law enforcement officer." Resp. 10. Plaintiffs then quote the Tenth Circuit in *United States v. Tucker*, 305 F.3d at 1200, interpreting *Knights* to mean that "a probation search [is] permissible so long as supported by reasonable suspicion, regardless of the motivation for the search." *Id.* These citations point to nothing more than "a high level of generality" about warrantless parole searches based on reasonable suspicion, which is not the factual context of the present case in which the search was a routine home visit conducted pursuant to a provision in Mr. Huff and Ms. William's parole agreements. Neither of these opinions identify a case in which an officer, acting under similar circumstances as Defendants in this case, was held to have violated the Fourth Amendment and, therefore, these citations do not suffice to notify Defendants that they were allegedly violating Plaintiffs' rights when they searched Plaintiffs' bedroom.

In *Samson v. California*, the Supreme Court held that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. 547 U.S. at 857.

Plaintiffs cite to *Samson* generally and reiterate that the Court "upheld a warrantless search of a parolee even in the absence of reasonable suspicion where the parolee had signed a parole agreement permitting parole officers or other peace officers to search the parolee with or without reasonable suspicion." Resp. 10. Plaintiffs then cite to the Tenth Circuit's decision in *United States v. Freeman*, 479 F.3d at 747-48, to support their assertion that "[i]n light of *Samson*, and absent reasonable suspicion, a Court can look to the written parole agreement and existing state law in order to determine whether the warrantless, suspicionless search passes constitutional muster." *Id*. at 10-11. In reversing the district court's denial of a motion to suppress, the *Freeman* court synthesized *Knights*, *Tucker*, and *Samson* to stand for the idea that state law largely dictates a parolee's expectation of privacy. 479 F.3d at 746-48. Although the Tenth Circuit found the search in *Freeman* unlawful, this was because the search did not comply with the Kansas Department of Correction's relevant parolee search policies. *Id*. at 744, 748-50. Again, Plaintiffs' *Samson* and *Freeman* citations show only a high level of generality in defining a Fourth Amendment right. These citations are not particularized to any degree to the facts of the present case, *see N.E.L.*, 740 F. App'x at 929, and do not serve to put Defendants on notice that their conduct violated Plaintiffs' rights in the situation they confronted. *See Estate of Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019) ("To be clearly established, ordinarily there must be prior Supreme Court or Tenth Circuit precedent, 'or the weight of authority from other circuits,' that would have put an objective officer in [defendant's] position on notice that he was violating [plaintiff's] Fourth Amendment rights." (alteration added) (*quoting Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001))).

Lastly,[1] Plaintiffs cite to and rely heavily on the Colorado Supreme Court's decision in *People v. McCullough*, 6 P.3d 774 (Colo. 2000), in which the court analyzed the state statute that requires parolees to "permit residential visits by the community parole officer, and allow the community parole officer to make searches of his or her person, residence, or vehicle" as a condition of parole. Plaintiffs specifically cite to page 781 of the opinion, on which the court held that a warrantless parole search is constitutional, even in the absence of "reasonable grounds," if the search (1) is conducted pursuant to any applicable statute; (2) is conducted in furtherance of the purposes of parole, i.e., related to the rehabilitation and supervision of the parolee;[2] and (3) is not arbitrary, capricious, or harassing. Resp. 11. Plaintiffs devote much of their argument on applying the *McCullough* factors to the case at hand, arguing Defendants' search of Plaintiffs' bedroom was not based on suspicion, not in furtherance of the purposes of parole, and was harassing. Setting aside the fact that *McCullough* is not binding for this analysis, the case does not

---

[1] Plaintiffs also quote *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987), for the proposition that "the United States Supreme Court recognized the government's interest in parolee supervision as a 'special need of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large.'" Resp. 9. In *Griffin*, the Supreme Court held the warrantless search of a probationer's residence was reasonable within the meaning of the Fourth Amendment because it was conducted pursuant to a state regulation that is itself a reasonable response to the special needs of a probation system. 483 U.S. at 872-73. Plaintiffs appear to quote the case to provide a general statement of law regarding parole searches, rather than to satisfy their burden under the second prong of qualified immunity analysis. Regardless, this case is not one where an officer acting under similar circumstances was held to have violated the Fourth Amendment, *City of Escondido*, 139 S. Ct. at 504, and therefore, this case does not put objective officers in Defendants' positions on notice that they were violating Fourth Amendment rights.

[2] Although the court held that, in order to be constitutional, a warrantless parole search must be conducted in furtherance of the purposes of parole, that requirement was subsequently rejected by the United States Supreme Court in *United States* v. *Knights*. *See Knights*, 534 U.S. at 116-18; *see also United States v. Mathews*, 250 F. Supp. 3d 806, 815 (D. Colo. 2017), *aff'd*, 928 F.3d 968 (10th Cir. 2019) ("Just one year after *McCullough*, the Supreme Court decided *Knights* and squarely rejected the argument that the Fourth Amendment required an inquiry into the purpose of the search. . . . Thus, Knights abrogated McCullough to the extent McCullough held that the Fourth Amendment requires an inquiry into the parole officer's purpose or primary motivation.").

stand for the proposition that parole officers violate the Fourth Amendment when searching the entirety of a residence shared by parolees and non-parolees during a routine home visit and residential search. *McCullough* involved a routine home search of a parolee's residence, which was not shared with any non-parolees or parole sponsors and which the Colorado Supreme Court found to be lawful under the Fourth Amendment. The case does not satisfy Plaintiffs' burden of identifying a Supreme Court or Tenth Circuit case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment.

Plaintiffs' citations simply reiterate the general constitutional framework for warrantless parole searches. While the Tenth Circuit has previously stated that "general statements of the law are not inherently incapable of giving fair and clear warning" and, thus, "a general constitutional rule that has already been established can 'apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful,'" *Anderson v. Blake*, 469 F.3d 910, 913-14 (10th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)), the court noted in later decisions that that standard set forth in *Hope* regarding clearly established law "appears to have fallen out of favor, yielding to a more robust qualified immunity." *N.E.L.*, 740 F. App'x at 928 n.18 (citing *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016) and *Mullenix v. Luna*, 136 S. Ct. 305, 308, 312 (2015)).

In sum, the Court finds Plaintiffs have failed to meet their burden of identifying a sufficiently analogous Supreme Court or Tenth Circuit case in response to Defendants' asserted qualified immunity. Therefore, Defendants are entitled to qualified immunity from liability for Plaintiffs' Fourth Amendment unlawful search claims, and the Court need not proceed to the second prong of the qualified immunity analysis. *See Husk*, 919 F.3d at 1212. Because Plaintiffs

have not shown any dispute of fact as to whether Defendants are entitled to qualified immunity as

to Claims Three and Four, summary judgment in Defendants' favor as to those claims is warranted.

C.    Do Plaintiffs Identify Clearly Established Law for their Unlawful Seizure Claims?

Finally, Plaintiffs each allege Defendants violated their Fourth Amendment rights by

placing them in handcuffs while Defendants conducted the search of their bedroom.  Plaintiffs'

burden in the face of Defendants' asserted qualified immunity remains the same: to satisfy the

clearly established prong, Plaintiffs must identify a Supreme Court or Tenth Circuit decision on

point, or that the clearly established weight of authority from other courts must have found the law

to be as Plaintiffs maintain.  *Clark*, 625 F.3d at 690.

For their unlawful seizure claims, Plaintiffs allege Defendants "lacked probable cause and

reasonable suspicion to detain, question or seize" Plaintiffs at the entry of their bedroom door, and

Defendants' actions "were undertaken intentionally, maliciously, callously, willfully, wantonly,

and/or in reckless disregard of" Plaintiffs' federally protected rights.  Compl. ¶¶ 168, 178, 188,

196.  With regard to their alleged seizure, Plaintiffs argue that "viewed in a light most favorable

to the Plaintiffs, Plaintiffs['] Fourth Amendment . . . seizure rights were violated by Defendants."

Resp. 14.  In support of this argument, Plaintiffs rely almost entirely on the Supreme Court's

opinions in *Muehler v. Mena*, 544 U.S. 93 (2005), *Michigan v. Summers*, 452 U.S. 692 (1981),

and *Graham v. Connor*, 490 U.S. 386 (1989).[3]  While Plaintiffs' argument and associated case

---

[3] Although Plaintiffs cite to four other cases on Fourth Amendment seizure law, these cases simply
provide general statements of Fourth Amendment law.  *See* Resp. 14.  The Court examined these
cases to see whether they satisfied Plaintiffs' burden of identifying a Supreme Court or Tenth
Circuit case on point.  None of these cases involve temporary, in-home detentions during the
execution of a routine parole search of a residence, or during the execution of searches of
residences at all.  *See Terry v. Ohio*, 392 U.S. 1, 16-17 (1968), *Romero v. Fay*, 45 F.3d 1472, 1476
(10th Cir. 1995), *Dunaway v. New York*, 442 U.S. 200 (1979), and *Cortez v. McCauley*, 478 F.3d
1108, 1115-16 (10th Cir. 2007).  These cases are not particularized to the facts of this case and do
not serve to put Defendants on notice that their conduct violated Plaintiffs' constitutional rights

citations address the first prong of the qualified immunity analysis, they do not make an explicit argument in their Response that the right Defendants allegedly violated was clearly established with respect to their unlawful seizure claims. However, the Court examined the cases Plaintiffs cite to see whether these cases are on point and satisfy Plaintiffs' burden under the clearly established prong.

In *Summers*, the Supreme Court found that officers did not violate the Fourth Amendment when they stopped the defendant-respondent as he was leaving his house and detained him while they executed a search of the premises. 452 U.S. at 705-06. The Court held that officers executing a search warrant have the authority "to detain the occupants of the premises while a proper search is conducted." *Id.* at 705. The Court noted that minimizing the risk of harm to officers is a substantial justification for detaining an occupant during a search, *id.* at 702-03, and ruled that an officer's authority to detain incident to a search is categorical and does not depend on the "quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure," *id.* at 705 n.19.

In *Muehler*, the Court again addressed the constitutionality of a seizure in the context of the execution of a search warrant. 544 U.S. 93. In that case, officers detained the defendant-respondent in handcuffs for two-to-three hours while they searched the premises where she was an occupant. *Id.* at 95. The Court held that, because a warrant existed to search the premises and the defendant-respondent was an occupant of the premises at the time of the search, her detention for the duration of the search was reasonable under *Michigan v. Summers* and did not violate the Fourth Amendment. *Id.* at 100. The *Muehler* Court applied the balancing test identified in its

when they temporarily detained Plaintiffs during the execution of a routine parole home search. Therefore, these cases also fail to satisfy Plaintiffs' burden.

earlier, *Graham v. Connor* decision, 490 U.S. at 396-97, and determined the use of force in the form of handcuffs was reasonable because the governmental interest in minimizing the risk of harm to both officers and occupants outweighed the marginal intrusion, in particular where there was the need to detain multiple occupants. *Muehler*, 544 U.S. 99-100. Plaintiffs also cited *Graham v. Connor* in their Response, arguing the Court should not extend *Summers* and *Muehler* to the context of parole searches but rather should apply the standard identified in *Graham* "by balancing the nature and quality of 'the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Resp. 16 (quoting *Graham*, 490 U.S. at 396).

Plaintiffs' citations to *Summers*, *Muehler*, and *Graham* do not satisfy their burden under the second prong of qualified immunity analysis. *Summers* and *Muehler* both considered seizures during the execution of valid search warrants, rather than parole home searches, and both found no Fourth Amendment violations had occurred. *Graham* considered what standard should be applied in considering claims of excessive force that arise during arrest, investigatory stops, or other "seizures." 490 U.S. at 388. None of these cases are on point, holding an officer acting under similar circumstances violated the Fourth Amendment, *City of Escondido*, 139 S. Ct. at 504, or are "particularized to the facts of the instant case" to put the Defendants on notice that their conduct violated Plaintiffs' rights. Moreover, the one case Plaintiffs cite addressing similar factual circumstances, the Ninth Circuit's decision in *Sanchez v. Canales*, stands for the opposite proposition: applying the *Muehler* justifications for permitting detention during the execution of a search warrant "with full force" to parole searches, *Sanchez* explicitly held "officers may constitutionally detain the occupants of a home during a parole or probation compliance search."

*Sanchez v. Canales*, 574 F.3d 1169, 1173 (9th Cir. 2009), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012).

In sum, the Court finds the Plaintiffs have failed to identify a Supreme Court or Tenth Circuit case in which an officer was held to have violated the Fourth Amendment when he or she handcuffed occupants during a search of a residence. Therefore, Plaintiffs have failed to carry the requisite burden and Defendants are entitled to qualified immunity from liability for Plaintiffs' Fourth Amendment unlawful seizure claims. Because Plaintiffs have not shown any dispute of fact as to whether Defendants are entitled to qualified immunity as to Claims Five and Six, summary judgment in Defendants' favor as to those claims is warranted.

## CONCLUSION

Plaintiffs have failed to demonstrate that genuine issues of material fact exist as to whether Defendants are entitled to qualified immunity from liability for Plaintiffs' six remaining claims. Therefore, CDOC Parole Officer Defendants' Motion for Summary Judgment [filed August 30, 2019; ECF 39] is **granted**. The Clerk of the Court is directed to enter judgment in Defendants' favor and to close this case.

SO ORDERED.

Entered and dated at Denver, Colorado, this 27th day of January, 2020.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge